We'll hear argument first this morning in Case 24-1056, RICO v. United States. Mr. Unikowsky. Mr. Chief Justice, and may it please the Court, the question in this case is not whether but instead how to hold people accountable for absconding from supervised release. The text and history of the Sentencing Reform Act establish that Congress intended for revocation, not fugitive tolling, to be the means of addressing abscondment. To begin with the text, the effect of the government's position is that Ms. RICO was subject to the conditions of supervised release for a period exceeding the time specified in her judgment, and there's no textual support for that result. The government claims that Ms. RICO wasn't serving her sentence at all during the period of the abscondment. But that argument cannot be squared with the government's simultaneous contention that Ms. RICO violated the conditions of supervised release during that period, warranting an increased sentence. History supports Ms. RICO's position. Contrary to the government's contention, there is no common law tradition of fugitive tolling for parole. Instead, fugitive tolling for parole came to exist via a 1976 statute and a 1983 implementing regulation. But in the Sentencing Reform Act, Congress prospectively repealed that statute and enacted nothing in its stead for supervised release, while leaving it intact for legacy parole cases, and it remains intact today. As a result, Congress has created a two-track scheme, parole with fugitive tolling and supervised release without it. And we ask the Court to adhere to that dichotomy. I welcome the Court's questions. Well, Mr. Unikowski, the government seems to be arguing, making a simple point, how can it be considered supervised release when the absconder is not being supervised? Your Honor, I completely understand the intuitive force of the government's argument that the essence of supervised release is being supervised, and if a person absconds, they're just not serving the sentence at all, in the same way as a prison escapee isn't serving the sentence at all. But ultimately, although I understand the intuitive force of that argument at first blush, I don't think it carries the day. Because the government has – government's argument has a counterintuitive component of its own, which is that it requires believing that not only was Ms. RICO subject to the conditions of supervised release during the entire abscommon period, but she actually violated those very conditions during that period, warranting her increased sentence. So it just seems to me almost tautologically, if Ms. RICO violated the conditions of supervised release, she must have been serving the very sentence that imposed those conditions of supervised release. I do understand the intuition underlying the government's argument today, that it just doesn't really make sense that a person should get credit when they've absconded. I get that. But I think that one point that really blunts the intuitive force of the government's position is that both parties agree that ultimately the absconder should be deprived of credit for the time spent absconding. The sole question between the parties today is very narrow. It's how that deprivation of credit should be effectuated. So the way we understand the Sentencing Reform Act, if a warrant issues based on the abscondment, as occurred in this case, then once the person is apprehended, even after the term expires, the person can be brought before the sentencing court, and then the judge revokes supervised release and strips the person of all credit for time served during the abscondment period. So essentially, the judge, rather than stopping the clock, the clock keeps going, and then the clock is rewound back to the beginning. But is it really a credit system, Mr. Unokowski? I guess I was a little confused by the government's suggestion, even at the beginning of its brief, that what's happening in the supervised release world is that the court is depriving the individual of credit for supervised release. My understanding is that even when there's a revocation, the person is not being deemed as giving credit. In other words, when supervised release is revoked and the court sends the person back to prison and perhaps imposes another period of supervised release, they don't calculate how much supervised release they're going to give based on how much was already served. You know, you had a three-year period, you absconded after one, so now only two is available. Really, credit doesn't seem like the right framework to understand what's even happening in supervised release. I agree with what you said, Your Honor, 100 percent. At the revocation hearing, whatever the person has left to serve just sort of goes away, and the court imposes a whole new sentence of imprisonment and an additional period of supervised release based on the court's assessment of the defendant at that time. Of the needs, right? I mean, isn't the whole – the reason why supervised release is sort of fundamentally different than parole or probation or imprisonment is because it's not imposed for punishment. It's supposed to be about helping this person reintegrate into society, and the amount of time that is necessary to do that is evaluated based on who that person is and what they've done, but not based on how much time they previously served in supervised release. Yes, that's correct. So the government's suggestion in its brief that because she absconded for 37 months, she has 37 months left to go doesn't actually capture what happened in this case. 37 months just went away. After the new revocation hearing, the judge imposed whatever sentence the judge felt was appropriate. The effect of the question presented in this case actually is to consider the time spent during abscondment as still subject to the conditions of supervised release, which allowed the government to argue that a crime committed during that period but after the term expired was a violation of supervised release, resulting in a heightened guidelines. Mr. Unikowsky, you said that the problem here results from the Sentencing Reform Act, but I wonder, and I may be misunderstanding things, so you'll correct me, if the problem here is not entirely one created by the sentencing guidelines. Suppose the sentencing guidelines were not in the picture. So your client absconds, therefore she's violated the terms of supervised release. Therefore, her supervised release is revoked. Then the judge has to decide what to do, send her back to prison, impose a new — excuse me, an additional term of supervised release. The statute sets out the factors that are relevant to that consideration. We went through those factors last term. And it doesn't seem to me that what she did after the expiration of the 37 months is any less relevant to those determinations than what she did before the expiration of the 37 months. So that becomes important, the 37-month point becomes important only because the guidelines grade — assign a grade to the nature of the offenses that occurred. Am I right in all this? Yes. I agree with everything you said, Your Honor. So we believe that the sentencing court does have the authority to consider the crimes she committed after that time expired as part of the discretionary decision as to what sentence she should get after the resentencing. So I don't disagree with anything that Your Honor has said. So the only thing that's really at stake here is whether the court is going — will consider whether to depart upward from the range that results from the — from the 37 months or considers whether to depart downward from the grade that would apply if the — the post-37 months violations were occurred, right? And the court — all the court has to do is to give respectful consideration to those guidelines. That's really all that's involved here. Am I right? On the facts of this case, yes. There are other cases in which fugitive tolling matters for other reasons. But on the facts of this case, you have accurately characterized the dispute between the parties. Mr. — I'm sorry. Go ahead and finish.  Done? Yes. All right. The government worries that, okay, there is tolling if you get a warrant within the period that's still — before the clock runs, before the 37 months is out. You effectively get tolling under I. But they worry that there are going to be some cases where, as a practical matter, they can't get a warrant in time and the period will expire. Do you have any thoughts or reactions to that? Yes. I understand that there is a concern that it may be that a violation occurs at the very end of the term and it goes undetected and the warrant doesn't issue in time. But I think fugitive tolling is both too broad and too narrow a solution to the problem that you've identified. So, first of all, I think it's too narrow because that is a problem that can arise with any violation late in the term — committing a crime, possessing drugs, anything else. Any escape detection, you're saying? Yes. And in fact, in some ways, absconding is the easiest type of violation to detect.  Right, because, you know, the absconder doesn't — or the supervisee doesn't answer his cell phone, and so the probation officer can get a warrant right away. So if we're concerned about the problem of late-in-term violations, it seems odd to focus only on the one type of violation that's easiest to detect. I also think fugitive tolling is too broad because it applies to supervisees who abscond any time in the term, and it causes the conditions to essentially last forever after the term until the person is apprehended. There's also an amicus brief by NACDL which walks through empirically that abscondents tend to occur early in the term. So I'm not sure the concern the government identifies has a lot of real-world force. What about the situation where the person who's on supervised release is imprisoned for a state offense? So the supervised release term is tolled during that period, and then when the person is released, the state authorities may not notify the federal court that the person has been released, so no warrant would issue. Right. So that is the facts of the Swick case, which is currently pending on certiorari to this Court. As far as I know, that's the only time that's come up since 1984. I've looked around. I haven't found any other cases with that fact pattern. So it's an unusual case. I think ultimately it's a good idea for federal probation officers to maintain contact with state authorities as to when the person is released from state prison. But I don't think that one singular, rather unusual fact pattern is a basis to establish fugitive tolling across the board for all supervisees. I'd like to make a point, if I may, about another reason that I think...  I'm sorry. In the end, it really doesn't matter. If they commit a new crime, they're subject to arrest and prosecution for that new crime, correct?  In this very case, Ms. Rico was convicted of a drug offense in state court and was sentenced to prison time. So she was held accountable for that action. And as Justice Alito stated, that can also be considered as part of the discretionary revocation sentencing. It's only a very narrow question of whether that offense increases her guidelines range. Mr. Unikowski, it seems that part of the dispute here between you and the government has to do with what it means to be on a term of supervised release, where you say it means being subject to a certain set of conditions. And the government says, well, it means that, but it also means something else. It means that you're being supervised, that you're being monitored in some way, where, which does not happen when the person has absconded. So what do you think of that, that the idea of supervised release contemplates a level of supervision above and beyond the particular conditions of the term? I respectfully disagree with the government's argument on that score because I think it improperly decouples the burdens imposed by the sentence with how to determine whether the person is serving the sentence. Ordinarily, those two are flip sides of the same coin. Like the government talks about the prison case. So the burden imposed by the sentence is you have to be in prison and you determine if the person satisfying the sentence by checking if the person has been in prison. But in this case, the burdens imposed by the sentence are the conditions in the judgment. But the government contends that when determined, if it, one satisfies the sentence based on this concept of supervision, which doesn't correspond to any particular supervised release condition. And because of that decoupling, you have the unusual fact pattern in this case, where the government contends that Ms. Rico violated the conditions of supervised release while not serving that sentence. I think the Court should follow the ordinary practice of saying that one determines if one is serving the sentence by looking at the binding effect of the sentence. I would like to also talk about some additional statutory clues that I think militate in Ms. Rico's favor. First, I think it's a relevant fact that there's no statutory definition of abscondment. And I think it's – and in fact, that's a difficult concept to define at the margins. There's two amicus briefs, the NACDL amicus brief and the NAFD amicus brief, that talk in some detail about the difficulties courts have had in deciding questions like when a violation of supervised release rises to the level of an abscondment and also when the clock on the abscondment period starts. And it does seem unlikely from our perspective that Congress would have intended the very basic question of when a supervised release term ends to be governed by this nebulous and non-statutory abscondment standard, with judges essentially figuring out the answer to these questions on the fly without any statutory anchor. It just seems more likely from our perspective that Congress intended the regime to operate this way. The clock keeps going unless it's told under the explicit language of Section 3624 or until there's a revocation hearing. At that point, the judge can recognize that it's necessary to turn the clock back to the beginning to ensure the person actually serves the full term of supervised release in contact with the probation officer that the court contemplated. I'd like to say a few words about history as well. I think the historical evidence is quite strongly in our favor. The government makes the point that there is a strong historical tradition that when someone escapes from prison, that stops the clock on their sentence and then the clock resumes when they are returned to prison. I think that makes sense. You know, 20 years in prison, you have to actually be 20 years physically in prison. But I think that the historical evidence really runs the other way in terms of fugitive tolling. The federal parole statute was first enacted in 1910, and then parole was abolished prospectively in 1984. And neither we nor the government can come up with any cases ever in which the government's fugitive tolling rule was applied, you know, in the manner the government proposes today, in which the conditions of supervised release, or excuse me, of parole extended after the scheduled expiration of the term. And it's not just the absence of evidence of fugitive tolling, there's also evidence of absence in the form of this 1983 regulation that we cite in the brief. So that regulation said that prospectively, based on this 1976 statute, there will be fugitive tolling in exactly, of exactly the same form that the government advocates in this case. So in a couple of ways, I think that regulation rebuts the notion that there's a tradition of fugitive tolling. One, it's premised on this 1976 statute, not this longstanding common law tradition. Two, it's prospective only, implying that the rule didn't previously exist. And second, and third, excuse me, it's not clear why the parole commission would have enacted such a rule if the tradition already existed in advance. So I think that provides pretty strong evidence that there just — this just wasn't a thing that parole boards were doing until 1983. And then in the Sentencing Reform Act in 1984, Congress repeals the statute on which this provision was based, 4210C. It enacts no replacement provision. And meanwhile, section 4210C is immediately adjacent to this other statute, 4210B, which enacts a version of prisoner tolling, and Congress does reenact that in the Sentencing Reform Act. Well, before the abolition of parole with the Sentencing Reform Act, there were no sentencing guidelines. So it's not clear to me why it would be relevant, why a court would be concerned about whether the parolee committed offenses during the period when the parolee was supposed to be on parole after the expiration of the parole term or not. The parolee violates the terms of parole. When the parolee is apprehended, the court would revoke parole and then decide what to do. So why would it be relevant? Suppose your client were on parole. Why would it be relevant to determine whether the additional things that she did while out on parole occurred before or after the 37 months? I mean, the 1983 regulation explicitly says that if you commit the violation after the schedule ending, it will be considered a violation of parole. So, you know, it's hard to reconstruct exactly what they were thinking, but presumably it was felt that this was important enough to encode it in a regulation. And so, you know, Congress had that regulation on its desk. It was enacted just a year before the Sentencing Reform Act, and Congress eschewed it in the Sentencing Reform Act. So I just think that that's at least some amount of historical consideration is warranted here, especially since I think what this case boils down to are these competing intuitions. The government has this intuition on its side of the House that it doesn't make sense to say that a person who isn't supervised is serving a sentence of supervised release. And then we have the intuition on our side of the House that it doesn't make sense to say that someone could have violated the conditions of supervised release when they're not on supervised release. And ultimately, it's the Court's job in this case to cut through that Gordian knot. And I think rather than kind of wrestling with these competing intuitions, I think it's wise to look at the historical tradition here, where we see that this just wasn't happening for the entire history of the parole statute. And so the proposition the government claims in this brief is very obvious didn't occur to the Parole Commission at the time. And so I think the Court should carry that tradition forward, at least to that extent. The rest of it being that the Court has ordered this person to serve, let's say, three-year period of supervised release, and they didn't do so. Why should they get the benefit of running away or absconding and not having to comply with the Court's order? Well, in some way, they just shouldn't, because at the revocation hearing, the judge is empowered to rewind the clock and require the person to start all over again. So we think there's an alignment between how abscommon is handled and other types of violations. But, I mean, there's revocation, that you envision Congress saying for the absconder, the revocation remedy is what we are imposing here. That's exactly right, and that's how it works with other types of violations. Like, it's true that part of the essence of supervised release is supervision, but part of the essence of supervised release is also complying with the law. And yet, if a person is in a conspiracy, say, for one year during the supervised release period, that's obviously plainly contrary to the spirit and the letter of supervised release. But the government does not claim that that stops the clock for the year. Instead, what happens is a warrant issues, the person comes to the sentencing court, and then supervised release is revoked, the person goes back to Federal prison, and then back on supervised release. And so effectively, the person is stripped of credit for that year, but it's done through the mechanism of revocation. And all we're saying in this case is that the same thing should happen to abscommon, which, after all, is just a different type of violation of the conditions of supervised release. SOTOMAYOR. Counsel, that earlier case, Swift, I think you said was the name?  Yes, Swift from the Fifth Circuit, Your Honor.  I haven't read it, so I don't know anything about it. But it's not an issue of keeping in touch with the State authorities. The warrant of absconding could have been issued, should have been issued, or a warrant should have issued the moment they learned of the State law conviction, correct? Yes. So that case involved a very idiosyncratic fact pattern of a person who served a Federal prison sentence and then served a State prison sentence for many years, and then was released, and actually did report to his State probation officer. And apparently, he didn't realize, and the Federal government didn't realize, that he also had to simultaneously start this term, a Federal supervised release, and apparently, no one from the Federal. Oh, that really is idiosyncratic. So, yes, so there haven't been, I mean, that is just an unusual case. It happens to be pending on certiorari right now. But we haven't found any cases like that since 1984 other than this one. So, you know, and the government cites other exotic fact patterns where a warrant wouldn't issue during the term, such as if there's an administrative error in obtaining the abscond warrant, and yes, theoretically, that could happen, but, you know, it doesn't happen very often, and in the ordinary case, like this one, it's perfectly appropriate for the probation officer to get a warrant. In that swift case, you have to deal with the language of the statute, which requires a warrant to have issued before the expiration of the date. Exactly, but in this case, a warrant did issue based on the abscondment, and so we agree, the sentencing warrant absolutely had the jurisdiction after the expiration. All right, thank you, counsel. But, okay, yes, Your Honor. So let me just make one other point about the structure of the statute that I think supports our position. That's rooted in Section 3583I, the tolling provision we just talked about. So that's not only about abscondment, but abscondent is one common scenario in which that statute would arise, because the statute says that if a warrant issues during the term, then the sentencing court retains jurisdiction after the expiration of the term to revoke supervised release. So ordinarily, you wouldn't have the situation where the warrant issues during the term, but the hearing happens after the term because the probation officer knows where the supervisee lives. So, you know, the warrant can be executed very swiftly. But one situation in which it couldn't be executed swiftly is when the person has absconded. So the warrant issues during the term, but they can't find the person until after the term expires. And yet even in that context, the way that Section 3583I is set up is it assumes that the term is going to end, and then after the expiration of the term, there will be this revocation hearing that rewinds the clock to the beginning. And I do think that's inconsistent with how the government is looking at things, which is that the term never ends once the abscondment occurs. And so, you know, that's just an additional piece of structural support in the statute that I do think militates in favor of our position. If there's no further questions, I'm going to close. Justice Thomas, any further? Justice Sotomayor? Justice Kagan? Jackson? Thank you, counsel. Thank you. Mr. Handel? Mr. Chief Justice, and may it please the Court. A supervisee is not discharging her term of supervised release while she is absconding from supervision. That common-sense intuition is consistent with the modern statutory text, with this decisional law preceding it. The supervised release statutes require that a supervisee shall be supervised by a probation officer following her release from confinement, and they detail how that active and ongoing supervision must proceed. This Court has accordingly recognized that supervised release is a system of both post-confinement monitoring and post-confinement assistance, neither of which is possible when the supervisee's whereabouts are unknown because she has absconded. A fugitive who deliberately and successfully evades supervision, depriving the Court of any information as to her conduct, condition, and compliance, is not being supervised in any sense that lawyers, legislators, or laymen would understand that word. Petitioner's theory that she was discharging the supervision component of her judgment despite being entirely unsupervised because her abscondment did not automatically terminate her release conditions misunderstands the nature of supervised release. To discharge her term of supervised release, a supervisee must be both under the supervision of a probation officer and subject to release conditions, but her defiance as to the former does not relieve her obligations as to the latter. Just as nothing in the supervised release statutes authorizes a supervisee to earn credit for time spent as an unsupervised fugitive, nothing permits her, by means of abscondment, to take a vacation from her court-ordered conditions whenever they prove inconvenient. Those two intuitive principles resolve this case. I welcome the Court's questions. You suggest that without the tolling, she would receive an unwarranted benefit. What exactly is that benefit? Yes. So I think there are a couple of possible benefits that a supervisee would receive from a period of fugitivity if you did not apply the fugitive tolling doctrine. So it does not apply to this case, but the most obvious and most serious benefit that a fugitive could receive would be the ability to just run out the term of supervised release while she is absconding. So in this case, what is the benefit? So in this case, the benefit is essentially that she avoided the post-confinement monitoring and surveillance. So if you have revocation as a sanction for that, what is this case about? Right, so this case, as I believe Justice Alito pointed out, this case really boils down to just a disagreement about the sentencing guidelines. And candidly, especially given Petitioner's concession that the court at the revocation hearing can consider the full range of conduct post-dating the abscondment, we don't think that in the real world this is going to shake out to that much of a difference when it comes to the actual revocation sanction. And I think we said as— So in the real world, in the real world, there is no benefit unless she runs out the clock before the government gets a warrant, I think. Is that right? I think that is the situation that we are mostly concerned about, yes. Okay. And if that's the situation you're concerned about, it seems to me that it's a very unlikely scenario to arise except for, as Mr. Unikowski says, if the violation occurs at the very end of the supervised release period, it might escape detection. And similarly, though that's true with anything a supervised release individual might do, any crime he or she might commit might escape detection at the end of that period. So respectfully, Justice Gorsuch, I disagree about the likelihood of the 3583I mechanism failing. So I think, as has been discussed, we have the Swick case out of the Fifth Circuit where a defendant was serving a state term of imprisonment and then did not report to her federal probation officer as she was directed. There's the Crane case out of the Ninth Circuit where a supervisee was in a residential treatment program, left early, and that was not reported to the probation officer. It's also possible a probation officer will miss other crimes at the very end of a period. Absolutely. These were not right at the end of the period, though. I mean, this is, you know, there are several real-world... Well, if the government has a problem getting warrants, maybe the government ought to go to Congress and ask for I to be amended, as it already has once. Thoughts? Well, Your Honor, so, you know, I know that the government occasionally comes in here and pleads, like, resource constraints and administrability concerns. That's what this one sounds like to me. Let me just say, with all respect, this process is completely between the probation office and the supervisee. The government does not get involved at the adjudication stage. Whoa, whoa, whoa, hold on. The probation officer isn't a government employee? The probation officer is a member of the judicial branch. I understand that, but you're pleading constraints for the government in whatever form it may be, and I appreciate those constraints, but the government's always been able to go to Congress and, in fact, did to amend I once already. Congress has proven pretty solicitous in this area, and the alternative is for us to create a fugitive tolling doctrine pretty whole cloth, and there appear to be at least two circuit splits, one about what is required to abscond. Is it just not showing up, or is it actually being completely unavailable for supervision? Another circuit split over what it means to be an absconder? Does it start when the status arises? Does it start later? And so we're going to have to come up with a whole common law doctrine here to supplement what I already says. Thoughts about that? Well, Justice Gorsuch, I disagree on the circuit case law on what constitutes abscondment. I think that the courts of appeals that have adopted are— I thought the Ninth Circuit said it's merely failing to appear, and the Fourth Circuit says you have to act in a way that precludes the government from supervising. So I think 20 years ago, the Ninth Circuit had one case that said that it could be any failure to appear or, like, anything that violated a release condition. Since then, they have clarified in Ignacio Juarez that it is actually a pattern of conduct that prevents supervision, that precludes supervision, and I think that is consistent with what the Fifth Circuit said in Swick and the Fourth Circuit said in Thompson. That's one court's view. I think the point that Justice Gorsuch is making is that we would have to decide, as a matter of common law, which of those approaches is right. Well, Justice Sotomayor, the only point that I'm making is that I believe there is actually a consensus on what constitutes abscondment in the courts of appeals that have adopted our view of how this statutory scheme works. Statutorily, supervised release can't go on for more than five years. Under your theory of this case, you're saying supervised release in part continues during the time of abscondment because they're subject to the terms that they violated, and yet it doesn't run out. Isn't that us, by common law, extending a period of punishment? No, Your Honor. Our view of— Tell me how not. If during the five years you violate those terms, you're still under supervised release terms, if you violate them, you're claiming that violation subjects you to a new warrant. How are we not extending the period? So, Justice Sotomayor, a term of supervised release requires that the supervisee is both subject to— It actually doesn't. In fact, it doesn't. The way the statute is written, it's up to the sentencing judge on whether actual supervision by the probation department is necessary. I grant you that I think in virtually all cases, most judges require it, but it's not legally required. Well, Your Honor, I think if we read supervision out of supervised release, that essentially renders 18 U.S.C. 3601 and 3603 a nullity. But then what happens to the defendant who is reporting every week, doing what he or she is supposed to do in terms of reporting to the agent, but is out there running a criminal enterprise every single day? That person, in my judgment, is not being adequately supervised. That person is violating the essence of the supervision, and yet you would claim he hasn't upscaled it. Yes, that person is certainly violating his release conditions, and I want to be very clear that we do not view— But that person could be not evading the entire spirit of supervised release, but that doesn't subject them to an extended period of supervised release, does it? Well, I think the distinction there is that if that person is actually being supervised, if their whereabouts are known to their probation officer, if they are checking in with their probation officer as required by the terms of their supervision, then their violative conduct is much likelier to actually be detected and to result in a revocation hearing and a new sanction. The reality is that it really is. I don't know. I mean, failing to show up is a pretty obvious way to detect a violation, it seems to me, more so than a lot of other criminal enterprises that might be going on. I dutifully show up, but I'm running a, you know, Murder and Mayhem Inc. over here. You just don't find it. You know, that's hard to find. You've got to go find that. Somebody doesn't show up, I notice. Yes, I mean, I agree with that, Justice Gorsuch, but I think that, you know, not showing up to a meeting is going to get you maybe a grade C violation at the most. It probably, in most instances, will not even be reported to the district court. You know, if you are out there running Murder Mayhem Inc. or something like that, I mean, that is obviously much more serious, egregious misconduct that we think if you are actually checking in with your probation officer, if your probation officer knows where you live and where you work and is able to conduct warrantless searches, as is, you know, one of the standard conditions of supervised release, that is much likelier for the probation officer to actually detect that misconduct, report it to the district court, and for that to result in the revocation. Counsel, you say when she absconds, Ms. Rico's supervision term doesn't run, but she is still subject to the requirements and can violate requirements such as that she has to report. Now, why isn't that just like a prisoner who escapes, and you would say, okay, he is going to not get the prison sentence time during that period, but he also violated the rule about prison inmates can only wear a particular type of clothing. It seems to me that is sort of a double counting. Well, I don't think so, Mr. Chief Justice. I mean, I would point out that when prisoners escape, whether it's from, you know, a physical BOP institution or from one of these other forms of confinement that BOP has developed, like home confinement, furlough, halfway house, something like that, they can be, obviously, at the moment of their escape, the clock stops on service of their term, and they will have to fulfill the undischarged portion of the term when they are recaptured, but they can also face institutional consequences for the behavior that they engage in when they are on escape status. Can I ask you? Not for the same reason. I mean, I think both Justice Sotomayor and the Chief might be pointing out that what you are suggesting is not really a tolling rule, because the traditional tolling is that the clock stops with respect to the obligation when you run away, and it picks up again when you're found again, and what happens in between, you can't be liable for under that same framework because the clock has stopped. So it seems to me that what you're actually asking for is an extension rule, one that allows for the obligations to occur throughout the whole period. When you're away, when you've absconded, you say she's still held to account for what happens in the context of supervised release. So that means those conditions are extending, not told, right? So, respectfully, Justice Jackson, I disagree with that characterization of it as an extension rule. I think that tolling in every circumstance is about stopping the clock, but tolling has never guaranteed an immediate— You're not asking for stopping the clock. That's my point. You're saying the clock is still going because that's what allows you to hold her accountable for the things that happen during the period when she's away. We're saying that the clock stops on service of the term, on discharging the term of supervised release, but tolling has never meant an immediate cessation of any attendant disabilities or restrictions that run with the sentence, right? I mean, this is true— One big difference is that, you know, your fugitive prisoner from BOP on the lam, he might commit a crime, and if he commits a crime, he's going to get a jury and a trial, whereas if on supervised release in the absconded scenario, your government would assert the right for a judge rather than a jury, and under a preponderance of the evidence standard rather than under a reasonable doubt standard, address any misconduct during that period, correct? Not quite, Justice Gorsuch. So I think — I mean, obviously, you are correct that any time someone commits a new crime, if they are going to be tried for that crime, they get a jury and, you know, all of the attendant protections of the Sixth and Seventh who's out on the lam, to the extent we are applying BOP institutional consequences for the behavior that he's— But that's separate. I think the point is that's separate from the tolling rule that we apply to prisoners who are on the lam. That's separate. Well, I think we view it as, you know, there is the tolling— Here it's inherent in the supervised release power that you say continues but doesn't continue. I think it's the same thing. I think we are tolling the service of the term, but there still may be additional consequences that attach for the behavior that occurs during that subscondent period. And I'm sorry. Justice Alito? Well, I was just going to ask whether you think that the petitioner's argument is inconsistent with or at least in tension with our decision last term in Asteris, which discussed the factors that are relevant in deciding whether to revoke supervised release and what to do if supervised release is revoked. Now, I recognize the factors are discretionary, but still the petitioner's argument is that what occurred after the 37 months is off the table. And I don't understand where it is of lesser significance. It can be taken into account only through the mechanism of a departure. But I don't see why what happened after 37 months is any less relevant than what happened before 37 months. I agree, Justice Alito, and I think that what this Court said in Asteris is that courts at a supervised release revocation hearing can and should take into account all of the forward-looking interests that criminal sentences serve, which includes deterrence, incapacitation, things like that. I think that giving supervised release the effect that Congress wanted, meaning that it is actually supervision, that it is the kind of post-confinement monitoring and post-confinement assistance that this Court recognized in Cornell Johnson and Roy Lee Johnson serves those interests that the Court recognized in Asteris. And I don't quite understand. I mean, I think there is certainly some tension in the idea that a person who violates their supervised release by absconding is going to be subject to a sanction derived from the full breadth of their conduct post-abscondment, but that the guidelines are limited to just a subsequent. What that suggests to me is that this is really, that tolling is a misnomer. If this were purely tolling, by analogy to what, to the fugitive tolling rule, Petitioner would not have been on supervised release at all during the whole period, during the whole period when she was absconding, but that she wouldn't be, she wouldn't be satisfying her terms. She also wouldn't be subject to the terms of supervised release. She wouldn't be really about tolling at all. Neither party really wants a pure tolling rule. It's about what is relevant, what should inform the decision about what should be done when there is a revocation. So, Justice Alito, we think that that is a distant second-best rule. We would prefer that rule to a rule of no tolling at all because, as I was discussing, I believe, with Justice Gorsuch earlier, our primary concern here is the idea that defendants will be able to abscond from supervision, wait out the expiration date of their term, and if a warrant or summons does not issue under 3583I, they will be able to render the supervision component of their judgment a nullity. That is the worst outcome here. That does not serve the system that Congress enacted in the sentencing. But isn't that exactly what Congress wanted? I mean, the reason why we have I, I think, is because Congress suggests that it's only in the situation in which a warrant does issue under those circumstances that the court's authority can extend to allow for a revocation. So I think what you're asking for seems diametrically opposed to the policy choice that Congress has made about the circumstances under which the person can be held accountable for something. Oh, I'm sorry. Yeah, yeah. I think I part ways with you on the history and purpose of subsection I. So I would point out, you know, Petitioner puts a lot of marbles in the 3583I bucket because that is essentially the only way that she's able to get around this idea that somebody can wait out. But that's because that's what Congress says about when this can be extended, when the power can be extended to hold her accountable. Well, you know, I would point out, just as a matter of history, that subsection I was not enacted until a decade after the Sentencing Reform Act. So in order to buy into her view, you have to accept the idea that the Congress that enacted the Sentencing Reform Act wanted supervisees to be able to entirely defeat the supervision component of their judgment through fugitivity and waiting out the expiration date of the sentence. I don't think that that's a plausible inference. But what they did was they put the burden on the government or the probation office to alert the court and get a warrant during the time when the person absconds. But Justice Jackson, there was no 3583I at that time. There was no 3583I. There was no warrant or summons extension mechanism for the first 10 years that the Sentencing Reform Act was in effect. That was not enacted until 1994. And your conclusion is then that we have to, now that 3583I exists, interpret it consistent with the preexisting state of affairs? Well, I have additional reasons that I think 3583I is insufficient. But I do think it's important to look at the history and think about what the Congress that enacted the Sentencing Reform Act was trying to do. And I think if Congress gave district courts, for the first 10 years of the supervised release system, gave district courts no tools whatsoever to go after absconding supervisees who were able to wait out the expiration date of their term, I think that that is very strong evidence that Congress anticipated that traditional ideas of fugitive tolling would be incorporated into the new supervised release system that they were enacting. But in terms of, you know, what I think 3583I was going after, I mean, as I think Patricia acknowledged on page 6 of her opening brief and as the Second Circuit recognized in the where there was not time left on the clock for the district court to conduct the revocation hearing required by Rule 32.1. Every court to have passed on 3583I has talked about this as being a provision that is designed just for those very late, end-of-term violations. It is not a general fugitive tolling provision. I guess, Mr. Handel, though, the question to you is in what provision do you put your marbles? I mean, in addition to 3583I, Mr. Unikowsky would say back to you, look, there is no fugitive tolling provision in this statute of the kinds that the government wants. There is a tolling provision in the statute. It applies to prisoners. It does not apply in this situation. And there is, in addition, a fairly granular, detailed instructions about what to do with a person like the petitioner here. In other words, that there should be a revocation, there should be a new sentence of imprisonment with a term of supervised release attached to it. So the statute offers a solution for what to do with prisoners like Ms. Rico. So where are we supposed to look in the statute for your solution? Right. So I think there are a couple of analytical questions based into this case. And the first one is just, are you serving a term of supervised release when you're unsupervised? And if you agree with us on that, that is just about, you know, the basic fundamental essence of supervised release, looking at the full range of statutes that Congress enacted here, 3601, 3603, 3624E, and saying, yes, Congress anticipated that when someone is sentenced to a term of supervised release, they will actually be supervised by a probation officer. If you agree with us that you have to actually be supervised to be discharging a term of supervised release, then you've already disagreed with petitioner's position. And then we just get to the secondary question of, okay, what do we do with these release conditions after abscondment? I'm happy to talk about that and why I think that abscondment should not If I take your argument right, that suggests that the only statutory provision you're pointing to is the one that identifies the person who actually does the supervision. Is that correct? I think 3601 imposes an obligation on a supervisee to be supervised, and 3603 imposes an obligation on the probation officer to supervise. I think those work together. It's pretty bare bones, yeah? You know, respectfully, I disagree with that characterization, Justice Kagan. And, you know, I think I will acknowledge that there is not an explicit fugitive tolling provision in the Sentencing Reform Act or any of the amendments akin to the carceral tolling provision. Nor is there a lot of detail about what the supervision looks like. So to the extent that you're putting all your marbles in this idea of supervision, I mean, the statute basically says, go get supervised. I mean, I think 18 U.S.C. 3603 actually puts some meat on the bones of what supervision should look like. I grant that that is oriented toward probation officers rather than the supervisee herself. But, you know, I think that that tells us what Congress thought supervision would look like in practice and what kinds of requirements for monitoring, reporting, assistance Congress was trying to bake into this system. Thank you. Yeah. Just to get to the 3624E carceral tolling provision, I think, as we pointed out in our brief, Congress had a very good reason for explicitly addressing that, and it's because there was a disagreement in the case law as to whether you would toll for terms of incarceration that arose during a period of supervision but were based on conduct that predated the term of supervision. So they couldn't quite be tethered to a violation of supervision in the way that, you know, this Court treated the interruption in Anderson v. Corral and Zerps v. Kidwell. Congress resolved that judicial disagreement in favor of more tolling. I don't think that that tells us much of anything about, you know, what they thought about fugitive tolling. Certainly it doesn't foreclose the existence of fugitive tolling in the sentencing reform. Can I just ask you one quick question about your supervision issue? Suppose we have a defendant who's in a coma. Are they being supervised? Is abscondment the only thing that triggers your argument that the person is not being supervised? Right. So I think there are, you know, any number of situations we could imagine, a comatose supervisee, you know, a lazy or incompetent probation officer, anything like this where supervision is not occurring in the way that Congress envisioned. And that, in your view, would warrant an extension of the supervised release? No, Your Honor. And this is because of, you know, I do think, I think the text gets us like 98 percent of the way. It gets us to the two-yard line in terms of what counts as supervision or not. And then the last, the last couple of yards have to incorporate background principles from the preexisting case law. And there I think you would look at, you know, against whom do we tax this failure of supervision? We recognize that this is not the system operating as Congress designed it. Maybe the probation officer is not meeting the duties imposed on him in 3603. Maybe the supervisee is not doing what, you know, she's technically required to do under the terms of the judgment. But how do we tax that failure? And I think that the lower courts that have adopted our view of this statutory scheme have gotten it right when they've said that a supervisee absconds, that a supervisee is told for her undischarged term of supervised release when she deliberately renders supervision impossible. You would not be able to satisfy the mens rea requirement as to a comatose supervisee or as to any situation in which the probation officer, rather than the supervisee, was at fault for the lack of supervision. Thank you. Thank you, counsel. Anything further? Thank you. Thank you. Unikowsky, rebuttal. Thank you, Mr. Chief Justice. I first want to address Justice Alito's question about the possibility of true tolling, under which during the abscommon period the person wouldn't be subject to the conditions at all. First of all, if that were the rule, then Ms. Rico would prevail in this case because the government's case hinges on Ms. Rico having violated the conditions of supervised release during that period. But second, we respectfully disagree with that rule as inconsistent with the judgment. The judgment does say that when the sentence expires, Ms. Rico will be subject to X number of months of supervised release. So I think what that means is that when Ms. Rico was released from prison, she serves X number of months of supervised release, and that doesn't stop because Ms. Rico makes the unilateral decision to abscond. I'd like to talk about Section 3583I. As counsel mentioned, that statute was enacted in 1994, and the reason it was enacted is that there were administration problems prior to the enactment of that statute. Several courts invented these judge-made rules to try to get around them. Finally, Congress solved the problem with Section 3583I, but I think it's notable that Congress enacted the statute with a very reticulated language that self-consciously departed from the parole equivalent, Section 4210C. It specifically required that the warrant issue during the term, and only then was jurisdiction extended until after the term. So that would have been a perfect opportunity for Congress to enact the same type of fugitive tolling rule that already existed for parole. Congress' decision not to do that, I do think, sheds light on the question presented here. I want to say a word about Section 3601, the statute that says that the supervisee shall be supervised, which counsel characterized as getting the government 98 percent there to the two-yard line. I don't think that statute's very helpful to the government. All it says is that the person shall be supervised. Moreover, that's just a prefatory provision in a portion of the U.S. Code addressing the duties of probation officers. That appears in Section 3601. The next section is about how probation officers are appointed, and then the next section after that concerns the duties of probation officers. So I think it's hard to read that as recognizing a fugitive tolling doctrine. It says nothing about tolling, nothing about extending the sentencing court's jurisdiction, nothing about stripping people of credit. And those are all topics that are addressed in other portions of the Sentencing Reform Act that do not enact the government's proposed rule. Ultimately, this case boils down to the proposition that there's just no statutory support for the government's claim that Ms. Rico could have been simultaneously on supervised release for purposes of finding a violation of the conditions, but off supervised release for purposes of determining whether she was serving her sentence. Because there is no textual support for fugitive tolling, we would ask the Court to reverse the judgment below. Thank you. Roberts. Thank you, counsel. The case is submitted.